IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION


MICHAEL LYNN KUNKEL                                                                  PLAINTIFF

V.                                    NO. 1:10-CV-0085-JWC

MICHAEL J. ASTRUE,                                                                    DEFENDANT
Commissioner, Social
Security Administration

## MEMORANDUM OPINION AND ORDER

Plaintiff, Michael Lynn Kunkel, seeks judicial review of his claim for disability insurance benefits.[1] Judicial review of the Commissioner's denial of benefits examines whether the decision is based on legal error and whether the findings of fact are supported by substantial evidence in the record as a whole. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009); see 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." *Wiese*, 552 F.3d at 730. In its review, the Court must consider evidence supporting the Commissioner's decision as well as evidence detracting from it. Id. That the Court would have reached a different conclusion is not a sufficient basis for reversal; rather, if it is possible to draw two inconsistent conclusions from the evidence and

---

[1] The parties have consented to the Magistrate Judge's jurisdiction. (doc. 4)

one of these conclusions represents the Commissioner's findings, the denial of benefits must be affirmed. Id.

An Administrative Law Judge (ALJ) held a hearing on March 2, 2010, and rendered an unfavorable opinion on June 21, 2010. The Appeals Council denied Plaintiff's request for review on September 22, 2010, rendering the ALJ's opinion the final opinion of the Commissioner.

Plaintiff was forty-three years of age at the time of the ALJ's decision. He had a Bachelor's of Science degree in nursing and past relevant work as a registered nurse, charge nurse and construction tile layer. His application for Disability Insurance Benefits alleged disability due to hearing loss, osteoarthritis, headaches, Lymes disease, residuals from being shot in 1996, tinnitus and kidney failure. The relevant time period for evaluating his claim is from February 26, 2007, the amended onset date, through June 21, 2010, the date of the ALJ's decision.

To evaluate Plaintiff's claim, the ALJ followed the five-step sequential process. See 20 C.F.R. §§ 404.1520; see also , 482 U.S. 137, 140-42 (1987). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, he found the medical evidence established that Plaintiff suffered from the following severe impairments: bilateral sensorial hearing loss, headaches and osteoarthritis. At step three, the ALJ

determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the listings). At step four, he evaluated Plaintiff's credibility, finding that his subjective complaints were not fully credible. He discussed in detail all of Plaintiff's complaints, including those added after the initial application, and concluded that Plaintiff had the Residual Functional Capacity (RFC) to perform a full range of light work activity, which involves lifting no more than twenty pounds at a time with frequent lifting or carrying objects weighing up to ten pounds. He did impose the restriction that Plaintiff must work in a controlled environment in which he is not exposed to loud noises. The ALJ further found that Plaintiff was unable to perform his past relevant work and thus continued to step five of the analysis. He considered the testimony of the Vocational Expert (VE) who was present at the hearing, finding that other jobs exist in the national economy that Plaintiff could be expected to perform, considering his age education, past work experience and FRC. Examples would include a light office nurse position, school nurse, general desk clerk, motel desk clerk, dispatcher, data entry clerk and admission clerk. Therefore, at step five, the ALJ found the Plaintiff not disabled.

Plaintiff makes three arguments: the ALJ's finding that Plaintiff did not meet a listing is unsupported by substantial evidence; the ALJ erred in not further

developing the record as to Plaintiff's breathing difficulties; and the ALJ's assessment of Plaintiff's RFC is inadequate because he failed to sufficiently state the medical basis for his findings.

## THE LISTINGS ARGUMENT

Plaintiff makes no specific argument on this point, merely stating that "Plaintiff does have a combination of impairments equal to a listing (20 C.F.R. § 404.1501 et. seq., Appendix 1)," without further elaboration. [2] Later, he says that the ALJ's finding is not supported by substantial evidence, again without elaboration. [3] Plaintiff fails even to state what listing he contends he meets, let alone to make an argument based on the medical evidence and applicable law why he contends Plaintiff meets a listing. Presenting the point in such a perfunctory way is not sufficient and constitutes a waiver. *Rotskoff v. Cooley*, 438 F.3d 852, 854-55 (8th Cir. 2006) (issue deemed abandoned when not developed in brief); *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting out of hand conclusory assertion that ALJ failed to consider whether claimant met Listings

---

[2] Plf's brief, p. 6.

[3] Plf's brief, pp. 7-8. The entirety of his argument is, " Furthermore, at the third step, the ALJ held the Plaintiff did not suffer an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 of the Regulations." "This finding is not supported by substantial evidence. Plaintiff has more than one impairment, and the symptoms, signs and findings for the impairment are to be considered in combination to determine if Plaintiff meets a listed impairment."

because claimant provided no analysis of relevant law or facts regarding Listings).

The ALJ's opinion discusses all of Plaintiff's alleged impairments, including those he did not find to be "severe" at step two of his analysis. He specifically finds Plaintiff not to have an impairment "or combination of impairments" equal to a listing. Plaintiff has submitted nothing to refute this finding, and the Court, in reviewing the medical evidence, finds no basis for saying that this determination lacks a substantial basis in the evidence.

## ALLEGED FAILURE TO DEVELOP THE RECORD

Plaintiff's argument on this point centers on his alleged breathing problems. He states that the ALJ "chose to ignore the severe breathing issues for which the Plaintiff has received treatment for (sic) over the years." He argues that because the ALJ obviously found the medical evidence regarding breathing problems to be inadequate, he should have further developed the record by attempting to clarify the medical situation regarding these problems. He says the case should be remanded so this can be done.

The ALJ did not ignore the alleged breathing problems. He discussed them in some detail, beginning with an accidental gunshot wound to the chest suffered by Plaintiff in 1996. The ALJ noted the lack of objective evidence and the lack of aggressive treatment as part of the basis for his finding that the problem was not severe. The issue is whether the records do sufficiently support this conclusion.

Plaintiff is correct that the ALJ is under a duty, where a crucial issue is undeveloped or underdeveloped, to further augment the record, even where a claimant is represented by counsel. However, this duty does not arise if the existing medical records provide sufficient evidence on which to base a finding. *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010) (ALJ must order medical examinations and tests only if records presented do not provide sufficient evidence to determine whether claimant is disabled). Plaintiff states that if the ALJ questions the veracity of the medical provider's treatment, he must make an attempt to clarify the record. The problem with that argument is that the ALJ here did not question the validity of the treatment afforded, but rather concluded from the lack of additional testing and aggressive treatment, among other things, that the treating doctor did not consider the complaints of shortness of breath to be serious enough to warrant more medical attention.

First, it does not appear that Plaintiff suffers significant residual effects from his accidental gunshot wound in 1996. He was admitted to the hospital with a gunshot wound to his right chest on May 1, 1996. Physicians inserted a chest tube to remove blood. This was taken out during his hospital stay. He remained stable and was discharged May 7, 1996, with the diagnosis of probable pulmonary contusion involving the right mid to lower lung field. The discharge summary showed that his hospital course was uncomplicated, and that he was without any

shortness of breath.[4]  Plaintiff saw Dr. David Kauffman, M.D., for various complaints during the next several years and the observation sections of the various doctor's entries consistently show the lungs to be clear.  Aside from visits where Plaintiff had a cold or other acute respiratory problems, there do not appear to be entries showing any lung problems.[5]  There is a notation dated August 22, 2006, showing that Plaintiff presented with complaints of chronic head congestion and productive cough, and including the observation that scattered rales and wheezing were present.  The note also indicates that Plaintiff was smoking at the time. It appears his condition was an acute problem because the next entry, dated September 14, 2006, notes that the lungs were clear.[6]  They were also noted to be clear on May 15, 2007, and May 28, 2008.[7]  As the ALJ noted in his opinion, Plaintiff's alleged onset date is February 26, 2011, some ten to eleven years after the gunshot wound.  His finding that there are no significant residuals from that wound is certainly supported by evidence of record.

As also noted by the ALJ, Plaintiff first complained of shortness of breath after he filed his claim for disability on August 26, 2008.  On September 18, 2008,

---

[4] TR. 171-182.

[5] See Dr. Kauffman's treatment notes dating from March 19, 2002, to May 7, 2009.  Exhibit 8F.  TR 255-309.

[6] TR. 266.

[7] TR. 229-230.

Plaintiff presented with a complaint of shortness of breath and production of dark blood, among other things, including a weight gain of twenty pounds.  Dr. Kauffman's notes do not reflect that he observed dark blood but do state that there were no rales or (undecipherable) in the lungs. [8]  On September 25, 2008, Plaintiff continued to complain of shortness of breath on exertion, [9] but on November 26, 2008, there was no complaint of shortness of breath and his lungs were noted to be clear. [10]  Plaintiff again complained of shortness of breath on the left side on January 20, 2009, and the doctor's notation was wheezing greater on the left than the right. [11]  Plaintiff's lungs were noted as clear on February 3, 2009, and April 7, 2009, even though he complained of shortness of breath and wheezing.[12]  There is nothing in these records which indicates a serious or severe, chronic lung condition and nothing sufficient to trigger a requirement that the ALJ further develop evidence concerning any lung problems.  His conclusion that a lung impairment has not been established by objective  medical evidence is supported by substantial evidence.

---

[8] TR. 263.

[9] TR. 262.  The note here does not contain a reference to whether there were objective symptoms.

[10] TR. 261.

[11] TR. 260.

[12] TR. 258-259.

THE RFC DETERMINATION

In his argument assailing the ALJ's Residual Functional Capacity (RFC) assessment, Plaintiff quotes his testimony at the administrative hearing concerning his bilateral hearing loss, which testimony indicates that his hearing problem is actually one of over-amplification.  He also refers to a letter written by Dr. Terry Burns indicating the degree and type of hearing loss.  He makes the statement that these findings essentially mean he is unable to work in a noisy environment such as an emergency department or ICU. It is unclear how this all bears on the question of adequacy of the RFC determination.  The ALJ specifically found that Plaintiff could not return to his former work in nursing, as he had been performing it and he expressly added the proviso to his determination that Plaintiff "must also work in a controlled environment in which he is not exposed to loud  noises." [13]  The ALJ noted that Plaintiff was able, during the administrative hearing, to clearly understand conversational speech without any difficulty.  Plaintiff's hearing loss would not prevent him from performing those jobs existing in the national economy which he found Plaintiff could perform.

Plaintiff also argues that the ALJ did not sufficiently articulate his medical basis for the RFC determination.  The ALJ extensively and exhaustively evaluated all the medical evidence for each condition alleged and stated why he did not find

---

[13] TR. 19.

them disabling.  He did discount the extent of limitations stated by Dr. Kauffman,[14] but stated adequate reasons for doing so, which Plaintiff has not challenged.  Nor has Plaintiff attacked the ALJ's credibility determination, which the Court finds to be supported by substantial evidence.  The ALJ did refer to the findings of agency physicians, who felt that Plaintiff could perform light work.  Given the thorough discussion of the medical evidence, the restrictions which take into account Plaintiff's hearing problem, and the lack of objective evidence of any disabling condition or combination of conditions, this Court cannot say that the RFC determination is unsupported by substantial evidence.

## CONCLUSION

The Court finds that the ALJ did not commit legal error and that his findings are supported by substantial evidence of record.  This case is therefore dismissed with prejudice.

IT IS SO ORDERED this 22nd day of March, 2012.

_____
UNITED STATES MAGISTRATE JUDGE

---

[14] TR 255.